```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/21/11
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
STEVEN SPAVONE,

                Plaintiff,

     - against -

N.Y.S. DEPARTMENT OF CORRECTIONAL
SERVICES, BRIAN FISCHER, Commissioner,
DEBORAH JOY, Director Temporary Release,
and NICK CHALK, Temporary Release Chairman,

                Defendants,
------------------------------------------------------------X

09 Civ. 0969 (RPP)

**OPINION AND ORDER**

**ROBERT P. PATTERSON, JR., U.S.D.J.**

### I. Introduction

On April 7, 2010, Plaintiff Steven Spavone moved for leave to file a supplemental complaint in order to add two new defendants, Jean King ("King"), the current acting superintendent at Woodbourne Correctional Facility ("Woodbourne") and K. Luse ("Luse"), Plaintiff's corrections counselor, to this pending action. On June 14, 2010, Defendants New York State Department of Correctional Services ("DOCS"); DOCS Commissioner Brian Fischer ("Fischer"); former Director of Temporary Release Programs ("TRP") for DOCS Debra Joy ("Joy"); and Chairman of the Temporary Release Committee for DOCS at Woodbourne Nicholas Chalk ("Chalk"), moved for summary judgment dismissing Plaintiff's complaint in this action. On October 20, 2010 Plaintiff moved for sanctions against Defendants' counsel, Steven N. Schulman.

Plaintiff's complaint, filed on January 5, 2009, asserts a claim of discrimination based on disability pursuant to the Americans with Disabilities Act ("ADA") and the Eighth and Fourteenth Amendments to the U.S. Constitution. The complaint alleges injury due to the denials

on November 24 and December 19, 2008 of Plaintiff's 2008 application for medical leave of absence ("MLOA") pursuant to the Medical Leave of Absence Program established under N.Y. Correction Law § 851(6) and 7 NYCRR § 1900.3(a)(3). Plaintiff asserts that Defendants, in their official and individual capacities, acted discriminatorily "because of [Spavone's] disability, denied Plaintiff a 'program' that he is otherwise eligible for, that would give Plaintiff access to an accommodation for his disability, which would enable him to obtain effective, proper, essential, required, and acknowledged medical care/therapies he requires for his well-being." (Compl. III) See also N.Y. Correction Law § 851(6). Plaintiff is diagnosed with Post-Traumatic Stress Disorder ("PTSD") and asserts that PTSD is a disability and that Defendants' denial of his application is discriminatory based on his constitutional right to equal protection of the laws. Plaintiff further maintains that these actions constitute a failure to accommodate his disability as required by the ADA and that he has exhausted his administrative remedies.

Defendants' summary judgment motion, accompanied by a notice to Plaintiff pursuant to Local Civil Rule 562, was supported by:

1. Declarations of Steven N. Schulman Esq.; Dr. Lester N. Wright, Chief Medical Officer of DOCS; Defendant Debra Joy, Former Director of the TRP for DOCS; and Defendant Nicholas Chalk, Chairman of the Temporary Release Committee at Woodbourne, the DOC's facility where Plaintiff was assigned when this litigation commenced. He is now assigned to the DOCS Sing Sing facility.

For the foregoing reasons, Plaintiff's motion for leave to file a supplemental complaint is granted, and Defendants' motion for summary judgment and Plaintiff's motion for sanctions are denied.

## II. Statement of Facts

Based on the deposition of Plaintiff (Schulman Decl. Ex. D) ("Spavone Dep."), Plaintiff is fifty-three years old, was born in Astoria, Queens, is married and has seven children. Id. at 20-21. He has a Masters Degree in Religion and a Doctorate in Divinity from the Universal Life Church in Modesto, California. Id. He is a member of the Bricklayers Union, Local One and has been diagnosed as suffering from PTSD. Id. at 22-24. Plaintiff was convicted of robbery in the first degree and four attempted robberies in the first degree in 2003 for which he received a ten year sentence on all counts to run concurrently. Id. at 25-27. He is conditionally scheduled to be released on March 13, 2011.[1] Id.

Spavone also has three previous convictions – one for robbery in the first degree in 1992 (sentenced to four and one-half to nine years of imprisonment) as well as two convictions for criminal possession of stolen property in 1991 and 1992, for which he received sentences of one year of imprisonment and five years of probation, respectively. Id. at 33-34. He served as a freedom fighter in combat in Nicaragua for nine months sometime around 1981-83 during which time people were murdered in front of him. Id. at 37-38. Spavone was engaged in restoration work on the Transportation Building next to the World Trade Center during the attack on September 11, 2001. Id. at 39. He is credited in letters to his sentencing judge with saving the lives of two fellow workers on a scaffold and with assisting persons in distress in the World Trade Center as well as seeing people jump to their deaths. (Schulman Decl. Ex. E at 61-63). He experiences nightmares with flashbacks to both the World Trade Center and his experience in Nicaragua. (Spavone Dep. at 37-39). In spring of 2008, Dr. Al Shimkunas, Chief Psychologist of Outpatient Services at Central New York Psychiatric Center, diagnosed Plaintiff's mental

---

[1] See Exhibit 1 for a copy of a poem entitled "When I Am Free" written by Plaintiff and submitted to this Court.

illnesses as PTSD, substance dependence, and paranoid personality disorder. (Schulman Decl. Ex. E at 65-66).

At the time of Plaintiff's sentence for the robbery and attempted robberies for which he is now incarcerated, Rey Cusicanqui of the Consulting Project: The Mitigation Specialists in Forest Hills, New York, submitted a letter stating that Spavone should receive as much psychiatric treatment and counseling services as can be offered by DOCS. Id. at 80. Plaintiff cites further to language published by the Federal Government's National Center for PTSD, PTSD and Criminal Behavior Fact Sheet which states in part:

"Because being in prison requires a person to be constantly vigilant regarding the threat of violence, an individual with PTSD who is in prison can be profoundly retraumatized and his or her PTSD symptoms may be exacerbated to the point where he or she will act out with violence. Finally, what is the psychiatric prognosis? Although PTSD is a chronic condition, with the proper treatment and education, its symptoms can usually be successfully managed. It is unlikely that survivors receive the proper treatment for PTSD during incarceration. In fact because prison life may retraumatize a person, a lengthy incarceration will likely seriously exacerbate PTSD symptoms and cause the person's level of functioning to deteriorate." Id. at 83.

One of the papers submitted by Spavone in support of his application for medical leave was a memo authored by Ed Rudder, a psychologist, and V.R. Imaghanti, a psychiatrist who treated Spavone at the Mental Health Unit at Eastern Correctional Facility where Spavone was incarcerated prior to his transfer to Woodbourne. This letter, addressed to the "Program Admissions Officer" and dated April 27, 2007, prior to Spavone's transfer to the DOCS Woodbourne Facility, reads as follows:

"To Whom it May Concern:

4

The above [Steven Spavone] is a patient of ours at this facility. He has recently brought to our attention that he soon expects to be eligible for a temporary release (medical leave of absence).

We strongly recommend that he be allowed to seek and obtain:

Exposure Therapy

Cognitive Behavioral Therapy

Group Therapy

These therapeutic modalities, especially if provided in a community in-patient program, will be of great benefit to this patient, as he continues to deal with PTSD symptomatology.

Thank you for your time and attention."[2] Id. at 55.

On September 10, 2008, Dr. Shimkunas wrote a letter to Debra Joy, then the Director of TRP at DOCS supportive of Plaintiff's effort to address his mental health problems. The letter stated in part that OMH staff members will continue to provide treatment and "will facilitate his transition to a residential program if his request is granted." Id. at 66. Joy's reply, on September 12, 2008, described MLOA as allowing "approved inmates to leave the institution to undergo surgery or receive medical or dental treatment not available in the correctional institution only if deemed absolutely necessary to the health and well being of the inmate." Id. at 64. "As described in your letter," Joy concluded, "[Spavone] would not appear to meet this statutory definition of Medical Leave of Absence." Id. She stated, however, that if Spavone applied for MLOA, "his application would be evaluated." Id.

---

[2] In connection with the motion, Rudder and Imaghanti have submitted affidavits stating, among other things, that Plaintiff drafted this letter and made other statements contrary to Plaintiff's position in this case. Plaintiff takes the position that these affidavits were created as a result of contact with defendants, despite a protective order by this Court designed to protect against such contact.

On September 11, 2008, Plaintiff wrote DOCS Commissioner Fischer requesting approval of a MLOA under the N.Y. Correction Law 855(3) pursuant to the Temporary Release Program Title 7 NYCRR § 1900.3(a)(3), attaching the Rudder and Imaghanti letter; two responses from not-for-profit agencies willing to provide "reasonable assurance of residential housing and treatment from programs that are willing to provide a residential/ impatient community based treatment program to meet my needs" ; the letter from the Consulting Program sent to Spavone's sentencing judge; copies of the articles about PTSD mentioned earlier; and letters from persons who observed his aid to victims on September 11, 2001. (Schulman Decl. Ex. E at 69-89).

Commissioner Fischer referred Plaintiff's letter to Defendant Joy who responded to Plaintiff on September 17, 2008 as follows:

"Commissioner Fischer has asked me to respond to your letter to him regarding temporary release. You must file an application for medical leave of absence at your facility for processing pursuant to Temporary Release Rules and Regulations." Id. at 67.

Plaintiff submitted Defendant DOCS's Form, "Notification to Temporary Release Committee" dated September 14, 2008. Id. at 24. Spavone indicated that he would like to apply for a "Leave of Absence" and designated his reason as "[t]o obtain a community and residential/in-patient program to provide essential medical care that cannot be provided to me while or during my incarceration for PTSD." Id. Plaintiff also stated he planned to stay with a "[d]esignated or [a]pproved program" with an address "[t]o be provided/obtained contingent on approval." Id. He checked boxes on the form stating "I want to meet with [a] Temporary Release Interviewer" and "I want to appear in person before the Temporary Release Committee." Id. He

also stated under the "Comments" section that he has "supportive and documented actual medical support from the leading medical experts on PTSD and from OMH." Id.

Spavone was not afforded a meeting with a temporary release interviewer, instead he states that his counselor, Luse, who had no understanding of temporary release procedures, met with him. (Spavone Dep. at 75-76). He states that Defendant Chalk, Chairman of Woodbourne's Temporary Release Committee, refused to review Plaintiff's medical documentation and that he was put before the Temporary Release Committee without having a proper application process. Id. at 81-82. He later learned he had a more than passing eligibility score (48 out of 52 points) to be eligible for TRP. Id. at 84-85.

The Temporary Release Committee at Woodbourne Correction Facility denied Spavone's application based on his criminal record stating he had committed violent robberies at gunpoint. Id. at 25. Plaintiff maintains his conviction for robbery and attempted robbery were non-violent and committed with a toy gun and that his record was misstated to the other members of the committee since it erroneously stated he had committed arson and another crime for which he had never been convicted. Id. Plaintiff was advised that he could not reapply for a medical leave of absence until October 2010. Id.

Spavone maintains that, as stated in May v. Hongisto, 99 Misc.2d. 918, 920 (NY Sup. Ct. Orleans County 1979), DOCS regulations require that the determiner "consider both the safety of the community and the best interests of the rehabilitation of the applicant in compliance with the Rules and Regulations of the Department" and that the Woodbourne Temporary Release Committee failed to consider the best interests of his rehabilitation in considering his application for MLOA.

On October 31, 2008, Plaintiff appealed the adverse decision of the Woodbourne Temporary Release Committee to Defendant Joy, to whom the Commissioner had delegated his authority over TRP. (Schulman Decl. Ex. E. at 25).The appeal was denied by Defendant Joy on November 24, 2008. It reads as follows:

"After careful review and consultation with NYSDOC Counsel's Office, there are no provisions in the Temporary Release Rules and Regulations that allow medical leave of absence for mental health reasons. Therefore your current application for a medical leave of absence is denied based on eligibility criteria." Id. at 5.

Joy wrote the Plaintiff another letter dated December 19, 2008 declining to reconsider his application. Id. at 6.

### III. Decision

#### A. Plaintiff's Motion for Leave to file a Supplemental Complaint

Rule 15(d) of the Federal Rules of Civil Procedure permits the court, upon motion of a party, to allow the filing of a supplemental pleading "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Supplemental relief "may include the addition of new defendants and new claims, if adequately related to the originally stated claims." McLean v. Scully, 1991 WL 274327, *1 (S.D.N.Y. 1991). The standard for the court's exercise of discretion on a motion to supplement the pleadings is a liberal one. That is, absent "any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" Forman v. Davis, 371 U.S. 178, 182 (1962).

Despite this lenient standard, if the supplemental amendment proposed by the moving party is futile, "it is not an abuse of discretion to deny leave to amend." Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993). "An amendment to pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)." Lucente v. Int'l Bus Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002). To survive dismissal, the proposed amended claim must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 555, 570 (2007)).

Here, Plaintiff moves for leave to file a supplemental complaint adding claims against two new defendants, Jean King, Woudbourne's current acting superintendent and K. Luse, Plaintiff's corrections counselor who served as the temporary release interviewer for Plaintiff's MLOA application. Plaintiff alleges that these two defendants participated in additional conspiratorial acts of deliberate indifference and cruel and unusual punishment, retaliation, harassment, abuse, misconduct, disability discrimination and contempt for federal and state laws under the ADA. (Supp. Compl. 3). Specifically, Spavone alleges that King, an agent of DOCS, refused to investigate Plaintiff's allegation of a serious illness and injury caused by another staff member, and that Luse refused to process Plaintiff's most recent application for MLOA. Spavone asserts that Luse refuses to process his application in retaliation for his commencing an action against Luse's supervisor, Defendant Chalk. Id. at 5-6.

Accepting Spavone's allegations as true, and reading the proposed supplemental complaint in a light most favorable to the Plaintiff, Spavone has adequately alleged additional injuries that were caused by these new Defendants and which are adequately related to the original claims. Furthermore, there is no indication of bad faith or a dilatory motive on the part

9

of the Plaintiff. Consequently, the Plaintiff's motion for leave to file a supplemental complaint is granted.

### B. Defendant's Motion for Summary Judgment

Defendant's motion for summary judgment is denied. The reasons given for the denial of Plaintiff's application for MLOA are discriminatory on their face. A decision denying participation in the TRP on the ground that the statute, N.Y. Correction Law 851(6), and the regulations do not mention mental health care as distinguished from medical care is to discriminate against inmates suffering from mental health issues such as PTSD. Mental health is generally recognized as a part of medical health. Mental health treatment is generally recognized as medical treatment. Langley v. Coughlin, 888 F.2d 252, 254 (2d 1989) ("We think it plain that from the legal standpoint psychiatric or mental health care is an integral part of medical care.") The absence of any specification of mental health care in the statute or regulations about leave of absence for medical care is not a proper ground for rejection. Accordingly, Plaintiff has raised a genuine issue of material fact as to whether the mental health treatment he seeks is "deemed absolutely necessary to the health and well-being of the inmate" as provided in 7 NYCRR 1900.3(a)(3). The Defendants' papers rely on statements by OMH psychologists and psychiatrists that the treatment offered to Plaintiff by OMH at DOCS facilities is "effective" but nothing in those declarations or affidavits states the degree to which such treatment is effective or truly rehabilitative and not merely sedative. None of those documents explains why the treatment Spavone seeks is not necessary to his heath and wealth being. In light of the rising numbers of inmates who are veterans of Iraq and Afghanistan, a percentage of whom have PTSD, it is important that their treatment be for their "well being" and not just ministerial so that

they can be released with the utmost confidence, by the authorities and for themselves, that they will not be a danger to society.

Counsel for Defendants also relies on affidavits and other material relating to events subsequent to the events which are the subject of the complaint, such as Plaintiff's reapplication for MLOA in the fall of 2010 and Defendants' denial of his reapplication in late 2010 for which he has not exhausted his administrative remedy. While these issues may go to the nature of the relief, if any, to which Plaintiff may have been or may be entitled to, Plaintiff has had no discovery on these issues and they are beyond the scope of the complaint.

Furthermore, the Defendants' papers raise issues of fact as to whether the present practices and policies of DOCS are being administered in accordance with the purposes of Section 851 and regulations which DOCS itself adopted. Defendant Joy states, for example, that applicants are no longer afforded the assistance of a temporary release interviewer because that position has been eliminated. (Joy Decl. ¶ 18). It is essential to have someone with the requisite knowledge available to assist an applicant in complying with the requirements for MLOA if the programs authorized by Section 851(6) are to be meaningful. Joy's declaration states that that position is now filled by the applicant's own correction's counselor but does not state that those persons have the necessary skills to provide assistance to inmates who need to comply with the requirements to gain approval for TRP. Id. at 18-19. Clearly a person skilled in corrections procedures but not used to assisting inmates with information about outside programs and facilities offering different services and other rehabilitative programs is not sufficient, as stated by Plaintiff in his deposition. (Spavone Dep. at 76). Without such assistance, applications for MLOA are doomed to failure and will not survive the application process. Indeed, Joy's statistics for 2008 suggest that the TRP may be being provided lip service by DOCS. In a DOCS

population of over 60,000, only 19 inmates, in that 12 month period, were granted any sort of leave of absence including funeral leave of absence, death bed leave of absence or medical leave of absence." (Joy Decl. ¶12).

Based on the record on this motion, there is an issue of fact as to whether, under the present regulations of DOCS, MLOA is not available for mental health treatment even if it is absolutely necessary to the "health and well being" of persons such as the Plaintiff.

Defendant's motion for summary judgment is denied. Plaintiff's motion for injunctive relief is also denied.

### C. Plaintiff's Motion for Sanctions

On October 20, 2010, Plaintiff moved this Court for sanctions of Defendant's counsel, Steven Schulman. Plaintiff asserts that Schulman's requests for deadline extensions were not justified by specifics and "lacked particulars as to sound reason for delay," and consequently, that Schulman should be sanctioned for "classic delay tactics." (Plaintiff. Motion for Sanctions at 1).

Plaintiff has provided no allegations and no evidence that Schulman has made any misrepresentations to this Court such that his behavior can be characterized as dilatory. As Plaintiff has not shown any violation of Fed.R.Civ.P. 11(b), Plaintiff's motion for sanctions is denied.

### IV. Conclusion

For the above stated reasons, Plaintiff's motion for leave to file a supplemental complaint is granted and Defendant's motion for summary judgment and Plaintiff's motion for sanctions are denied.

The parties are to attend a telephone conference on February 10, 2011 to determine what further discovery is required prior to trial.

SO ORDERED.

Dated: New York, New York
January 20, 2011

_____
Robert P. Patterson
U.S.D.J.

**Exhibit 1**

## When I Am Free
### By: Steven "Cisco" Spavone

Our State leaders say that we are
No good and destitute,
But our Governor just got fired,
Over a prostitute.

Two more years says Parole because
You lived too wild,
But a Parole Commissioner just got
Caught soliciting sex from a child.

Lawmakers and Politicians say that
We deserve no relief,
But the most powerful one of them
Just got indicted as a thief.

There are many more and these
Are just a sample,
Is this how our Lawmakers and Politicians
Lead by example?

I sit back and observe those who run
This State system that I am in,
And the extent of the corruption and
Incompetence is truly a sin.

With all these examples that have
Been presented to me,
How am I expected to live my life
"When I Am Free"?

**Copies of this Opinion sent to:**

*Pro se Plaintiff:*

Steven Spavone
03-A-4330
Sing Sing Correctional Facility
354 Hunter
Ossining, NY 10562

*Counsel for Defendants:*

Steven Neil Schulman
Office of the Attorney General, New York State
120 Broadway
New York, NY 10271
212-416-8654
Fax: 212-416-6009